**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DENNIS CUSTY and ANNE CUSTY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **CASE NO:** |
| | ) | **JURY TRIAL DEMANDED** |
| ROANOKE COMPANIES GROUP, INC. | ) | |
| d/b/a TILE PERFECT, INC., | ) | |
| n/k/a BRTT, INC. a/k/a | ) | |
| H.B. FULLER COMPANY, | ) | |
| SLR, INC. d/b/a EASY CARE PRODUCTS, | ) | |
| INNOVATIVE CHEMICAL | ) | **FILED: MAY 01, 2008** |
| TECHNOLOGIES, INC.; | ) | **08CV2483    AEE** |
| ORTEC, INC.; | ) | **JUDGE KENNELLY** |
| AEROFIL TECHNOLOGY, INC.; | ) | **MAGISTRATE JUDGE ASHMAN** |
| HOME DEPOT USA, INC. a/k/a | ) | |
| THE HOME DEPOT, INC. | ) | |
| | ) | |
| Defendants. | ) | |

<u>**PLAINTIFFS' COMPLAINT**</u>

Plaintiffs DENNIS CUSTY and ANNE CUSTY, by counsel Kᴇɴɴᴇᴛʜ J. Aʟʟᴇɴ &

Associatᴇs, ᴘ.ᴄ., come before this Honorable Court and submit this Complaint for

Damages and Demand for Jury Trial. In support, Plaintiffs respectfully show the following:

**Introduction**

1.     This is a tort action arising from serious personal injuries suffered by Dennis

Custy, and the resulting loss of society, companionship and consortium endured by his

wife Anne, after using a defective product known as "Tile Perfect Stand 'n Seal 'Spray-On'

Grout Sealer" that is designed, developed, manufactured, marketed, labeled and/or distributed by Roanoke Companies Group, Inc. d/b/a Tile Perfect, Inc., n/k/a BRTT, Inc. a/k/a H.B. Fuller ("Roanoke") and SLR, Inc. d/b/a Easy Care Products ("SLR"). Innovative Chemical Technologies, Inc. ("ICT") and Ortec, Inc. ("Ortec") provided at least one of the raw materials and Aerofil Technology, Inc. ("Aerofil") aerosolized the ingredients into cans of "Tile Perfect Stand 'n Seal 'Spray-On' Grout Sealer" that were sold at retail stores owned, operated and controlled by Home Depot USA, Inc. a/k/a The Home Depot, Inc. ("Home Depot").

### Parties, Jurisdiction and Venue

2.      Plaintiffs are citizens of the State of New Mexico. At all times pertinent to this matter, Plaintiffs have been and are lawfully married. By filing this lawsuit, Plaintiffs avail themselves of the jurisdiction and venue of this Court.

3.      Roanoke is incorporated in the State of Missouri with its principal place of business at 1105 South Frontenac Street in Aurora, Illinois 60504. At all times pertinent to this matter, Roanoke was in the business of designing, developing, manufacturing, packaging, labeling, marketing and/or selling tile setting and sealing products, including "Tile Perfect Stand 'n Seal 'Spray-On' Grout Sealer." Roanoke's successor in interest, Roanoke Companies Group, Inc., is incorporated in the State of Minnesota with its principal place of business at 1200 Willow Lake Boulevard, St. Paul, Minnesota 55110.

4.     SLR is incorporated in the State of Arizona with its principal place of business at 20701 North Scottsdale Road, #107, PMB 510 in Scottsdale, Arizona 85255. At all times pertinent to this matter, SLR was and is in the business of designing, developing, manufacturing, packaging, labeling, marketing and/or selling tile sealing products, including "Tile Perfect Stand 'n Seal 'Spray-On' Grout Sealer."

5.     ICT is incorporated in the State of Georgia with its principal place of business at 103 Walnut Grove Road in Cartersville, Georgia 30120. At all times pertinent to this matter, ICT was and is a manufacturer, distributor and/or supplier of specialty chemicals, including raw materials for "Tile Perfect Stand 'n Seal 'Spray-On' Grout Sealer."

6.     Ortec is incorporated in the State of South Carolina with its principal place of business at 505 Gentry Memorial Highway, Easley, South Carolina 29640. At all times pertinent to this matter, Ortec was and is a manufacturer of custom chemicals, including at least one raw material for "Tile Perfect Stand 'n Seal 'Spray-On' Grout Sealer."

7.     Aerofil is incorporated in the State of Missouri with its principal place of business at 225 Industrial Park Drive in Sullivan, Missouri 63080. At all times pertinent to this matter, Aerofil was and is a contract packaging company specializing in aerosols, including "Tile Perfect Stand 'n Seal 'Spray-On' Grout Sealer."

8.     Home Depot is incorporated in the State of Georgia, with its principal place of business at 2455 Paces Ferry Road in Atlanta, Georgia 30339. At all times pertinent to this

3

matter, Home Depot was and is engaged in the business of operating retail stores in which it sells various products and assists customers with home improvement needs through the products purchased, including "Tile Perfect Stand 'n Seal 'Spray-On' Grout Sealer."

9.    The amount in controversy, exclusive of costs and interest, exceeds $75,000.00.

10.    This Court has personal jurisdiction over Defendants because they maintain the minimum contacts to Illinois to subject themselves to the jurisdiction of Illinois courts for purposes of due process, and the exercise of such jurisdiction does not offend the traditional notions of fair play and substantial justice.

11.    This Court has subject matter jurisdiction over Plaintiffs claims pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1332 (diversity).

12.    Venue is proper pursuant to 28 U.S.C. § 1391 since a substantial part of the events or omissions giving rise to the claim occurred within the Northern District of Illinois.

13.    Defendants are joint tortfeasors, jointly and severally liable to Plaintiffs for all injuries and damages alleged herein and proximately caused by Defendants' negligence.

### Operative Facts

14.    Plaintiffs incorporate paragraphs 1 through 13 above as if fully restated herein.

4

15.    On or about November 2, 2006, Home Depot #3507, 2820 Coors Boulevard, NW, Albuquerque, New Mexico 87120 sold Dennis Custy "Tile Perfect Stand 'N Seal Spray on Grout Sealer" that was part of the admittedly defective production run #A31445 ("the Subject Product").

16.    The Subject Product was purchased as new property designed, developed, manufactured, assembled, labeled, packaged, marketed and/or sold by Defendants. The Subject Product was then placed in the stream of commerce by one or more of the Defendants.

17.    On or about November 22, 2006, Plaintiff Dennis Custy applied the Subject Product as directed and intended in his home.

18.    Instructions on the Subject Product do not require consumers to use respiratory protection for safe application and expressly guarantee that the Subject Product "will harmlessly evaporate."

19.    Shortly after using the Subject Product, Plaintiff Dennis Custy developed acute nausea, severe shortness of breath and dyspnea.

20.    As designed, developed, manufactured, assembled, packaged, labeled, marketed and sold, the Subject Product was defective and unreasonably dangerous in that the risks of the Subject Product outweighed its utility and because the Subject Product failed to incorporate either adequate warnings or reasonable and available alternative

designs (including alternative labeling and packaging designs) that would have rendered it less dangerous for use by the public, including Plaintiff Dennis Custy in particular.

21.    As designed, developed, manufactured, assembled, packaged, labeled, marketed and sold, the Subject Product was not merchantable, was not fit for the specific purpose intended, was inadequately labeled and did not conform to its promises and affirmations of fact.

22.    As a direct and proximate result of exposure to the Subject Product, which was unmerchantable, unfit and defectively designed, developed, manufactured, assembled, packaged, labeled, marketed and sold, Plaintiff Dennis Custy has suffered, presently suffers and will continue to suffer in the future from memory loss and severe and debilitating lung damage including without limitation Reactive Airway Dysfunction Syndrome ("RADS")that significantly limits his abilities to carry out ordinary activities of daily living. Plaintiff Dennis Custy has incurred and will continue to incur substantial medical bills, lost wages and other economic expenses as a proximate result of his condition, as well as pain, suffering and loss of enjoyment of life now and into the future. As a result of Plaintiff Dennis Custy's condition, Plaintiff Anne Custy has suffered and will continue to suffer a compensable loss of the society and companionship of her husband.

23.    The Subject Product comes from production run # A31445, which is one of the sixteen admittedly defective batches of "Tile Perfect Stand 'n Seal Spray 'On-Grout' Sealer"

6

that yielded approximately 300,000 faulty cans.

24.     Defendants had notice no later than May 2005 that customers who purchased "Tile Perfect Stand 'n Seal 'Spray-On' Grout Sealer" were suffering breathing difficulties and other injuries. Defendants identified sixteen defective production runs of "Tile Perfect Stand 'n Seal 'Spray-On' Grout Sealer" by no later than June 2005. Despite this knowledge, Defendants waited until August 2005 to recall their defective product.

25.     Roanoke states on its website that all defective cans of "Tile Perfect Stand 'n Seal 'Spray-On' Grout Sealer" were removed from the shelves of Home Depot stores as of August 6, 2005. The truth, however, is that Defendants failed to remove, and Home Depot continued selling the defective product to unsuspecting consumers such as Plaintiff Dennis Custy, until at least November 2, 2006, more than one year later.

## COUNT I: STRICT PRODUCT LIABILITY / PRODUCT DEFECT
### (All Defendants)

26.     Plaintiffs incorporate paragraphs 1 through 25 above as if fully restated herein.

27.     The Subject Product was defective and unsafe for its intended purpose at the time it left Defendants' control in one or more of the following ways:

     a.    The Subject Product was defectively manufactured and unreasonably dangerous because the risk of harm and serious injury to users under foreseeable and anticipated conditions and situations outweighed the benefits of the chosen design of the product, including its chemical structure, labeling, assembly, packaging and marketing, which caused

Plaintiff Dennis Custy and other users similarly situated to unknowingly aspirate, and become overexposed to, harmful chemicals;

b.    The Subject Product was packaged and marketed in a manner such that the dangerous effects of the product when used as directed were increased and assured that the amount of airborne toxic vapors to which users are exposed would be increased;

c.    The Subject Product, as labeled and marketed, failed to adequately warn or apprise users such as Plaintiff Dennis Custy of the full dangers of use of the product as designed and marketed, thereby depriving users of the ability to make a fully informed choice about the purchase and use of the product and increasing the danger of their being exposed to it and suffering injury;

d.    The Subject Product as sold to individual, retail consumers such as Plaintiff Dennis Custy failed to include, or adequately recommend in its labeling or marketing, use of adequate ventilation and/or necessary accessories such as NIOSH-approved respirators, which the Defendants knew of and recommended to institutional, commercial users of the same or similar product;

e.    The Subject Product failed to implement safe, technologically feasible and economically practical design alternatives in the product, its packaging, its labeling and its design which would have mitigated or cured the design and labeling defects noted above; and

f.    The warnings and instructions which were given on the packaging of the Subject Product were vague, inadequate and insufficient, exacerbating the risks of harm to users of the product such as Plaintiff Dennis Custy.

28.    As a direct and proximate result of the defects in the Subject Product, Plaintiff Dennis Custy suffered severe and debilitating injuries and economic damages and his wife suffered a loss of consortium, companionship and company in their marriage.

8

29.    Roanoke and SLR are strictly liable for Plaintiffs' injuries as manufacturers of the Subject Product.

30.    ICT, Ortec and/or Aerofil became manufacturers of the Subject Product by altering Roanoke and/or SLR's design. As such, ICT, Ortec and/or Aerofil are strictly liable for Plaintiffs' injuries.

31.    Roanoke, SLR, ICT, Ortec and Aerofil are also strictly liable for Plaintiffs' injuries as assemblers and/or distributors of the Subject Product because they knew or should have known that danger may result from its intended use but failed to give adequate warning of such danger.

32.    Roanoke is strictly liable for Plaintiffs' injuries as a private labeler of the Subject Product because it knew or should have known that danger may result from its intended use but failed to give adequate warning of such danger.

33.    Home Depot is strictly liable for Plaintiffs' injuries as a retailer or seller of the Subject Product because it knew or should have known that danger may result from its intended use but failed to give adequate warning of such danger.

34.    Defendants are jointly, severally and strictly liable to Plaintiffs for their damages in an amount to be determined by the enlightened conscience of the jury.

## COUNT II: NEGLIGENCE
### (All Defendants)

35.     Plaintiffs incorporate paragraphs 1 through 34 above as if fully restated herein.

36.     As designers, developers, manufacturers, assemblers, labelers, packagers, marketers, private labelers and/or sellers of products for sale to the consuming public, Defendants owed a duty of care to design, develop, assemble, manufacture, label, package, market and sell a reasonably safe product that contained adequate information and warnings to consumers about its use.

37.     Defendants breached their duty of care in one or more of the following respects:

a.      by designing, developing, manufacturing, assembling, labeling, packaging, marketing and selling the Subject Product with dangerous combinations of toxic chemicals which created a risk for injury and harm that outweighed the utility of the product and was not necessary for the product to still have utility;

b.      by designing, developing, manufacturing, assembling, labeling, packaging, marketing and selling the Subject Product with directions for use such that its dangerous effects when used as directed were increased and would assure that the amount of airborne toxic vapors to which users are exposed would be increased;

c.      by designing, developing manufacturing, assembling, labeling, packaging, marketing and selling the Subject Product in such a way that it failed to adequately warn or apprise users such as Plaintiff Dennis Custy of the full dangers of its use, thereby depriving them of the ability to make a fully informed choice about the purchase and use

of the Subject Product and increasing the danger of them being exposed to it and suffering injury;

d.    by failing to include with the Subject Product sold to individual, retail consumers such as Plaintiff Dennis Custy, or adequately recommend in its labeling or marketing, use of adequate ventilation and/or necessary accessories such as NIOSH-approved respirators, which the Defendants knew of and recommended to institutional, commercial users of the same or similar product;

e.    by failing to implement safe, technologically feasible and economically practical design alternatives in the Subject Product, its packaging, labeling and design which would have mitigated or cured the negligent acts or omissions noted above;

f.    by giving warnings and instructions on the labeling and packaging of the Subject Product that were vague, inadequate and insufficient, exacerbating the risks of harm to users such as Plaintiff Dennis Custy;

g.    by failing to implement adequate inspection procedures and/or quality controls to ensure the Subject Product was safe for use by the general public and Plaintiff Dennis Custy in particular; and

h.    by failing to timely recall the Subject Product and further neglecting to promptly remove it from the shelves in Home Depot stores.

These acts and omissions taken by themselves, or in combination, were a proximate cause of Plaintiffs' injuries and damages.

38.    As a direct and proximate result of the Defendants' negligence, Plaintiff Dennis Custy suffered severe and debilitating injuries and economic damages and his wife suffered a loss of consortium, companionship and company in their marriage.

39.    Defendants are jointly and severally liable to Plaintiffs for their damages in an amount to be determined by the enlightened conscience of the jury.

## COUNT III: VIOLATIONS OF UNFAIR PRACTICES ACT
### (All Defendants)

40.    Plaintiffs incorporate paragraphs 1 through 39 above as if fully restated herein.

41.    Under N.M. Stat. Ann. §§ 57-12-2, 57-12-3,  it is unlawful to represent that goods or services "are of a particular standard, quality or grade or that goods are of a particular style or model if they are of another" and to fail "to deliver the quality or quantity of goods or services contracted for."

42.    Defendants committed a per se violation of N.M. Stat. Ann. §§ 57-12-2, 57-12-3 by designing, manufacturing, assembling, packaging, labeling, distributing and/or selling the Subject Product with a guarantee that it "evaporates harmlessly," which they knew was false.

43.    Defendants' conduct in designing, manufacturing, assembling, packaging, labeling, distributing and/or selling the Subject Product with a guarantee that it "evaporates harmlessly" also violates the Unfair Practices Act's general prohibition of unfair and deceptive practices.

44.    It is prohibited under N.M. §§ Stat. Ann. 57-12-2, 57-12-3 to represent that goods "are of a particular standard, quality or grade" if they are not.

45.    Defendants committed a per se violation of N.M. Stat. Ann. §§ 57-12-2, 57-12-3 by misrepresenting that the Subject Product is "free from defects in material" after the

conscious decision was made to incorporate Flexipel S-22WS into the Subject Product – an aerosol grout sealer – even though the Material Safety Data Sheet expressly states that Flexipel S-22WS should not be aerosolized.

46.    Defendants' conduct in designing, manufacturing, assembling, packaging, labeling, distributing and/or selling the Subject Product with Flexipel S-22WS also violates the Fair Business Practices Act's general prohibition of unfair and deceptive practices.

47.    As a direct and proximate result of the Defendants' per se and general violations of the Unfair Practices Act, Plaintiff Dennis Custy suffered severe and debilitating injuries and economic damages and his wife suffered a loss of consortium, companionship and company in their marriage.

48.    Defendants are jointly and severally liable to Plaintiffs for their damages in an amount to be determined by the enlightened conscience of the jury.

## COUNT IV: BREACH OF WARRANTIES
### (Roanoke and Home Depot)

49.    Plaintiffs incorporate paragraphs 1 through 48 above as if fully restated herein.

50.    Roanoke expressly warranted that the Subject Product "will harmlessly evaporate" and that it was free from "defects in material".

51.    Roanoke breached these express warranties because the Subject Product did not harmlessly evaporate and, in fact, caused significant injury to Plaintiff Dennis Custy.

13

The Subject Product also did not conform to Roanoke's express warranties in that there were defects in the materials which made it unsafe for use.

52.     As a direct and proximate result of Roanoke's breach of its express warranties, Plaintiff Dennis Custy suffered significant physical injuries and economic damages and his wife suffered a loss of consortium, companionship and company in their marriage.

53.     As sellers of consumer goods such as the Subject Product, Home Depot owed a duty to sell products that it impliedly warranted to be: a.  merchantable; b.  fit for the ordinary purposes for which they are intended to be used; c.  adequately contained, packaged and labeled; and d.  in conformity with the promises or affirmations of fact made on the container or label.

54.     Home Depot breached these implied warranties because the Subject Product was not merchantable, was unfit for the purpose intended, was not adequately labeled and did not conform to the promises or affirmations of fact made on the container because, when used as directed, it subjected the user to unsafe toxic conditions that are likely to, and this case did, cause grievous harm to the user.

55.     As a direct and proximate result of Home Depot's breach of these implied warranties, Plaintiff Dennis Custy suffered significant physical injuries and economic damages and his wife suffered a loss of consortium, companionship and company in their

marriage.

56.    Roanoke and Home Depot are jointly and severally liable to Plaintiffs for their

damages in an amount to be determined by the enlightened conscience of the jury.

## COUNT V: VIOLATIONS OF UNIFORM FRAUDULENT TRANSFERS ACT
### (Roanoke)

57.    Plaintiffs incorporate paragraphs 1 through 56 above as if fully restated

herein.

58.    Roanoke entered into an asset purchase agreement dated January 20, 2006 in

which it sold substantially all of its assets to another company, including the "Tile Perfect

Stand 'n Seal 'Spray-On' Grout Sealer" product line, while at the same time excluding all

liability to consumers such as Plaintiff Dennis Custy who were exposed to defective cans

of that product.

59.    Roanoke transferred its assets to another company with actual intent to

hinder, delay or defraud individuals such as Plaintiff Dennis Custy as evidenced by the fact

that: a.  before the transfer was made, Roanoke had been sued or was threatened with suit

pertaining to exposure to defective cans of "Tile Perfect Stand 'n Seal 'Spray-On' Grout

Sealer"; b.  the transfer was of substantially all of Roanoke's assets; c.  the value of the

consideration received by Roanoke was reasonably equivalent to the value of the assets

transferred; and d.  the transfer occurred shortly before or shortly after a substantial debt

was incurred.

60.    As a direct and proximate result of Roanoke's fraudulent asset transfer, there may be insufficient funds to satisfy Plaintiffs' claims against Roanoke.

## COUNT VI: PUNITIVE DAMAGES
### (All Defendants)

61.    Plaintiffs incorporate paragraphs 1 through 60 above as if fully restated herein.

62.    Defendants were aware long before this incident occurred that families and individuals would use the Subject Product for household projects in the State of New Mexico.

63.    Defendants were aware long before this incident, or should have been aware had they demonstrated any level of concern for the safety of consumers, that the Subject Product, as designed, developed, manufactured, packaged, marketed, labeled and sold to Plaintiff Dennis Custy had an unreasonable propensity to expose users to inordinate amounts of toxic, dangerous chemicals and cause injury and/or the potential for long-term harm.

64.    Despite Defendants' knowledge of the dangerous qualities of the Subject Product as designed, developed, manufactured, packaged, labeled, marketed and sold, and/or as the result of a conscious indifference to or disregard for the safety of others, Defendants did not recall or remove the defective products from stores in a timely manner so that innocent victims such as Plaintiff Dennis Custy would not be severely injured.

16

65.     As a result of Defendants' clear and convincing, wanton and reckless indifference to the safety and well-being of the consumer public and users of the Subject Product, Plaintiff Dennis Custy and others have been harmed in the past or could be harmed in the future by the Subject Product.

66.     Defendants' tortious acts and/or omissions evince a conscious indifference to the consequences of their acts and thereby demand and warrant an award of punitive damages that will punish Defendants for the harm they have caused and that will deter them from similar future misconduct.

67.     Defendants' violations of the Unfair Practices Act also demand and warrant an award of punitive damages that will punish Defendants for the harm they have caused and that will deter them from similar future misconduct.

68.     Roanoke's violations of the Uniform Fraudulent Transfers Act further demand and warrant an award of punitive damages that will punish the company for the harms caused and that will deter it from similar future misconduct.

### COUNT VII: VIOLATIONS OF CONSUMER PRODUCT SAFETY ACT
### (All Defendants)

69.     Plaintiffs incorporate paragraphs 1 through 68 above as if fully restated herein.

70.     The Consumer Product Safety Act, 15 U.S.C. § 2064(b)(2), requires every manufacturer, distributor and retailer of a consumer product distributed in commerce to

17

"immediately" inform the Consumer Product Safety Commission when it has information "which reasonably supports the conclusion that such product . . . contains a defect which could create a substantial product hazard."

71.    Defendants are manufacturers, distributors and/or retailers of Stand 'n Seal, a consumer product, which was distributed in commerce and then sold to Plaintiff Dennis Custy.

72.    Defendants committed a per se violation of 15 U.S.C. § 2064(b)(2) by failing to immediately inform the Consumer Product Safety Commission of the problems with Stand 'n Seal after receiving information that their product created a substantial product hazard.

73.    The Consumer Product Safety Act, 15 U.S.C. § 2064(b)(3), also requires every manufacturer, distributor and retailer of a consumer product distributed in commerce to "immediately" inform the Consumer Product Safety Commission when it has information "which reasonably supports the conclusion that such product . . . creates an unreasonable risk of serious injury or death."

74.    Defendants committed a per se violation of 15 U.S.C. § 2064(b)(3) by failing to immediately inform the Consumer Product Safety Commission of the problems with Stand 'n Seal after receiving information that their product created an unreasonable risk of serious injury or death.

75.    Defendants' conduct also violates the Consumer Product Safety Act's general prohibition against subjecting the public to unreasonable risks of injury associated with consumer products.

76.    As a direct and proximate result of the Defendants' per se and general violations of the Consumer Product Safety Act, Plaintiff Dennis Custy suffered severe and debilitating injuries and economic damages and his wife suffered a loss of consortium, companionship and company in their marriage.

77.    Defendants are jointly and severally liable to Plaintiffs for their damages in an amount to be determined by the enlightened conscience of the jury.

**Prayer for Relief**

78.    Plaintiffs incorporate paragraphs 1 through 77 above as if fully restated herein.

79.    Plaintiffs pray for the following relief:

   a.    that summons issue and service be perfected upon each Defendant requiring them to appear in this Court within the time prescribed by law and answer this Complaint;

   b.    that Plaintiff Dennis Custy recover all compensatory damages – general and special – allowed by law, jointly and severally from all Defendants, or a combination of one or more of the Defendants, in an amount to be determined by the enlightened conscience of the jury, but not less than $10 million;

   c.    that Plaintiff Anne Custy recover all components of loss of consortium damages allowable under the law, jointly and severally from all

Defendants, or a combination of one or more of the Defendants, in an amount to be determined by the enlightened conscience of the jury, but not less than $1 million;

d.    that punitive damages be awarded against all Defendants, jointly and severally, to punish them for the harm they have caused and to deter Defendants from similar future misconduct in an amount to be determined by the enlightened conscience of the jury, but not less than $100 million;

e.    that Roanoke's fraudulent transfer of assets be voided to the extent necessary to satisfy Plaintiffs' claims;

f.    that all attorneys' fees and expenses of litigation be taxed against Defendants pursuant to N.M. Stat. Ann. § 57-12-10 and other relevant provisions of New Mexico law;

g.    that Plaintiffs have a trial by jury;

h.    that all costs be taxed against Defendants; and

i.    for such other and further relief as the Court deems just and appropriate.

WHEREFORE, plaintiffs, DENNIS CUSTY and ANNE CUSTY respectfully request the entry of judgment in their favor and against defendants, for compensatory damages in an amount to be determined herein, for the costs of this action, and for any and all other relief that the Court may deem proper under the circumstances.

KENNETH J. ALLEN & ASSOCIATES, P.C.
Attorneys for Plaintiffs

/S/Michael T. Terwilliger
Kenneth J. Allen
Michael T. Terwilliger

20

## <u>JURY DEMAND</u>

Plaintiffs demand trial by jury on all Counts of their Complaint.

> KENNETH J. ALLEN & ASSOCIATES, P.C.
> Attorneys for Plaintiffs
>
> /S/Michael T. Terwilliger_____
> Kenneth J. Allen
> Michael T. Terwilliger



*Refer to Office Indicated*

| ☒ ALLEN LAW BUILDING | ☐ CHASE BANK CENTER | ☐ CHARTER ONE BANK | ☐ SMURFIT-STONE BUILDING |
|---|---|---|---|
| 1109 Glendale Boulevard | 8585 Broadway, 8th Floor | 17450 South Halsted St. | 150 North Michigan Ave. |
| Valparaiso, IN 46383 | Merrillville, IN 46410 | Homewood, IL 60430 | Chicago, IL 60606 |
| 219.465.6292 | 219.736.6292 | 708.799.6292 | 312.236.6292 |

INJURY ATTORNEYS